# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LIVE FACE ON WEB, LLC,** : | |
| : | Case No. 2:19-cv-00528-JDW |
| *Plaintiff,* : | |
| : | |
| v. : | |
| : | |
| **MERCHANTS INSURANCE GROUP, et al.**, : | |
| : | |
| *Defendants.* : | |

## MEMORANDUM

This is the case of the missing email. Plaintiff Live Face on the Web claims that in 2017, it sent an email to its insurance agent Martin Insurance Group alerting Martin that Live Face wanted to amend an insurance policy to replace one car with another. Martin says it never received the email. As a result, Martin never conveyed any request for a policy amendment to Merchants Insurance Group, which had written the policy at issue. When the new car was in an accident, Live Face sought coverage from Merchants. Merchants initially accepted coverage but then denied it because the car at issue was not covered by the policy. So Live Face sued Martin and Merchants. All parties have now moved for summary judgment. For the reasons that follow, the Court will grant Merchants' motion for summary judgment and grant Martin's partial summary judgment motion. The Court will deny Live Face's summary judgment motion. The Court's ruling will leave for trial Live Face's negligence claim against Martin.

I.  **FACTUAL BACKGROUND**

Live Face purchased automobile insurance from Merchants through Martin for a policy period from November 22, 2017, through November 22, 2018 (the "Policy"). When written, the Policy listed four covered cars, including a 2015 Mercedes C300W4 and a 2017 Mercedes S550.

Live Face claims that, in June 2017, it notified Martin that it replaced the 2015 Mercedes with a 2017 Mercedes C300W4 and that the Policy should be amended accordingly. Live Face claims that on December 12, 2017, it again notified Martin of the vehicle change by emailing a copy of the lease for the 2017 Mercedes C300W4 to ehamilton@immartin.com. Martin denies that it was notified on either occasion of Live Face's request to amend the Policy.

On September 17, 2018, the 2017 Mercedes C300W4 was involved in an accident. Live Face submitted a claim notice to Merchants. The claim notice listed the 2017 Mercedes S550 as the car involved in the accident, not the 2017 Mercedes C300W4. However, the Philadelphia Police accident report listed the 2017 Mercedes C300W4. Merchants initially accepted coverage for the accident and paid a damage claim to the other driver involved in the accident. It also sent an appraiser to inspect the vehicle. After getting the appraiser's report, Merchants determined that the car involved in the accident was the 2017 Mercedes C300W4, not the 2017 Mercedes S550. Merchants denied coverage in a letter dated October 25, 2018, because it concluded that the Policy did not cover the 2017 Mercedes C300W4.

Live Face filed suit against Martin and Merchants. It seeks a declaratory judgment that the Policy applies to the 2017 Mercedes C300W4 and asserts claims for breach of contract, statutory bad faith under Pennsylvania law, negligence, and vicarious liability. All parties have moved for summary judgment, though Martin's Motion does not ask for a judgment on the negligence claim against it.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of

Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

### III. ANALYSIS

#### A. Breach of Contract

An insurance policy "is simply a contract and its provisions should, of course, be construed as in any other contract." *Atl. Health Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 463 F. App'x 162, 169 (3d Cir. 2012) (quote omitted). To prevail on its breach of contract action, Live Face must prove: "(1) the existence of a contract between the plaintiff and defendant, including its essential terms, (2) a breach of duty imposed by the contract, and (3) damages resulting from that breach of duty." *Boyd v. Rockwood Area Sch. Dist.*, 907 A.2d 1157, 1165 (Pa. Commw. Ct. 2006) (citation omitted).

Live Face has established the existence of a contract—the Policy—between it and Merchants. However, Martin was not a party to the Policy. Thus, there is not factual dispute to

resolve on Live Face's claim against Martin for breach of contract. Notably, Martin made this argument in its Motion, but Live Face did not respond.

Unlike Martin, Merchants is a party to the Policy. The question, then, is whether the Policy extended its coverage obligations to the 2017 Mercedes C300W4. The Policy states, in relevant part, that Live Face "is authorized to make changes in the terms of this policy with [Merchants'] consent. This policy's terms can be amended or waived only by endorsement issued by [Merchants] and made a part of this policy." (ECF No 1, p. 59 of 94). Resolving factual disputes in Live Face's favor, Live Face can establish that it notified Martin of its request to amend the Policy. However, nothing before the Court suggests that that request made its way to Merchants, and Merchants certainly did not consent to or issue an endorsement to the Policy to change the Policy's coverage. Because the Policy was never amended, its coverage did not extend to the 2017 Mercedes C300W4, and Merchants did not breach a duty under the Policy.

In its Motion, Live Face argues that Merchants violated Pennsylvania's Unfair Insurance Practices Act and regulations promulgated pursuant to that statute. In particular, Live Face focuses on the Pennsylvania Administrative Code, which states, in relevant part: "Within 15 working days after receipt by the insurer of properly executed proofs of loss, the first-party claimant shall be advised of the acceptance or denial of the claim by the insurer." 31 Pa. Code § 146.7. According to Live Face, this provision barred Merchants from revisiting its decision to accept coverage for the accident. Thus, goes Live Face's logic, by breaching this regulation, Merchants breached the Policy.

That argument fails for several reasons. First, only the Pennsylvania Insurance Commissioner can enforce the UIPA, including its regulations; there is no private right of action. *See Caplan v. Fellheimer, Eichen, Braverman & Kaskey*, 5 F. Supp.2d 299, 302 (E.D. Pa. 1998).

Second, the Policy does not incorporate or impose on Merchants obligations under the UIPA or its regulations. Absent the incorporation of these obligations into the Policy, their potential violation does not breach the Policy. Third, and finally, to the extent Live Face's arguments attempt to invoke doctrines of waiver or estoppel, neither can create an insurance contract where none existed. *See Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 107 Fed.Appx. 266, 268 (3d Cir.2004) (*citing Wasilko v. Home Mut. Cas. Co.*, 210 Pa.Super. 322, 232 A.2d 60, 63 (1967)). Thus, because the Policy did not extend to the 2017 Mercedes C300 in the first place, Live Face cannot use these doctrines to expand the Policy's coverage.

### B. Declaratory Judgment

The Court's resolution of the breach of contract claims also disposes of Live Face's request for a declaratory judgment because that claim seeks a declaration of Live Face's rights under the Policy. In addition, the Third Circuit has advised district courts to decline proceeding with declaratory judgments when they duplicate other claims. *State Auto Insurance Company v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) (a "federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.") Live Face's request for a declaratory judgment runs afoul of this rule, and summary judgment on that claim is appropriate for this reason, as well.

### C. Bad Faith

Live Face asserts its bad faith claim under 42 Pa.C.S.A. § 8371. That statute only permits claims against an "insurer." B*rown v. Everett Cash Mutual Insurance Company*, 157 A.3d 958, 968 (Pa. Super. CT. 2017). Martin is not an insurer. Therefore, Live Face cannot pursue claims against Martin for bad faith. *See, e.g.*, *Margaret Auto Body, Inc. v. Universal Underwriters Grp.*,

No. 01750 MAY.TERM 2002, 2003 WL 1848560, at *1 (Pa. Com. Pl. Jan. 10, 2003) (denying bad faith claim against insurer's agent for claims arising under an insurance policy).

To prevail on a bad faith claim, a plaintiff must present clear and convincing evidence that, among other things, an insurer "did not have a reasonable basis for denying benefits under the policy" or that an insurer committed a "frivolous or unfounded refusal to pay proceeds of a policy." *See Bernstein v. Geico Cas. Co.*, Civ. A. No. 19-1899, 2020 WL 1308226, at * 3 (E.D. Pa. March 19, 2020) (quoting *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.3d 680, 689 (Pa. Super. Ct. 1994) and *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1108 (E.D. Pa. 1992)); *see also Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000). Because Live Face must prove this by clear and convincing evidence at trial, its "burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Gold v. State Farm Fire and Cas. Co.*, 880 F.Supp.2d 587, 598 (E.D. Pa. 2012) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)).

The Court has already concluded that Merchants had no contractual obligation to pay any benefits under the Policy. Therefore, its refusal to do so cannot have been unreasonable. In its Motion, Live Face relies on Section 136.7 in the Pennsylvania Administrative Code to suggest that Merchants' failure to pay the benefits was unreasonable after it initially accepted coverage. However, the Court does not read Section 136.7 to prevent an insurer from changing a coverage determination based on new information. More importantly, Live Face has not cited, and the Court has not located, any case that interprets Section 136.7 the way that Live Face interprets it. Thus, Merchants was reasonable in understanding Section 136.7 to permit it to revise its coverage determination based on new information.

That's what Merchants did. Merchants received a notice of loss that reported that the car involved in the accident was the 2017 Mercedes S550, which the Policy covered. It is undisputed that Merchants promptly sent an appraiser and, upon reviewing the appraiser's report, learned that the car involved was not actually covered. Merchants' delay in revisiting its coverage determination did not make its actions bad faith *per se*. *See, e.g.*, *DeWalt v. Ohio Cas. Ins. Co.*, 513 F.Supp.2d 287 (E.D.Pa.2007) (insurer's actions in allegedly delaying investigation did not constitute bad faith under Pennsylvania law; there was no evidence that such delay was deliberate or knowing, or was unreasonable.)

Merchants probably could have been more diligent here. The police report from the accident listed the correct car involved in the accident. Had Merchants reviewed the police report at the time of the coverage determination, it would have noted a discrepancy between the car listed on the notice of loss and the car listed on the police report. But an insurer "need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion." *Mann v. UNUM Life Ins. Co. of Am.*, No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003). Nothing in the record before the Court establishes that Merchants acted with reckless disregard of its obligations or otherwise fell so short that it acted in bad faith.

### D. Negligence

Martin does not seek summary judgment on the negligence claims, but Live Face does. The elements for a negligence claim are duty, breach, causation, and damages. *T.A. v. Allen*, 447 Pa.Super. 302, 669 A.2d 360, 362 (1995) (en banc), *appeal denied*, 544 Pa. 661, 676 A.2d 1201 (1996). Duty is a question of law for the court to decide. *Brisbine v. Outside In School of Experiential Educ., Inc.*, 799 A.2d 89, 95 (Pa. Super. Ct. 2002). Pennsylvania law imposes on

insurance agents a duty to obtain the coverage that a reasonably prudent insurance professional would have obtained under the circumstances." Under Pennsylvania law, an "insurance broker is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances." *Indus. Valley Bank & Tr. Co. v. Dilks Agency*, 751 F.2d 637, 640 (3d Cir. 1985) (quote omitted); *see also Berenato v. Seneca Specialy Ins. Co.*, 240 F. Supp.3d 351, 362 (E.D. Pa. 2017). Thus, Martin owed Live Face a duty as a matter of law.

However, the Court cannot determine at this phase of the proceedings whether Martin breached that duty. Live Face claims that it in June 2017 it instructed Martin to amend its coverage with Merchants to include the 2017 Mercedes 300CW4. It has claims that it emailed that instruction to Martin, and it provides a copy of that email. However, Martin says that it never got those instructions. And, while proving a negative is always difficult, Martin offers a sworn statement from its Chief Information Officer that its records do not reveal calls from the telephone numbers at issue and its servers do not contain Live Face's email. The record before the Court therefore presents a factual dispute about whether Live Face gave Martin instructions about the 2017 Mercedes 300CW4. A jury has to resolve that dispute.

### E. Vicarious liability

Live Face asserts that Merchants is vicariously liable for Martin's negligence because Merchants and Martin had an agency relationship. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir.1994) (internal quotation omitted). Under Pennsylvania law, an agency relationship requires a "manifestation by the principal that the agent shall act for [it]." *Tribune-Review Publ'g Co. v. Westmoreland Cty. Hous. Auth.*, 833 A.2d 112, 119–20 (Pa. 2003) (*citing Basile v. H & R Block,*

*Inc.*, 563 Pa. 359, 761 A.2d 1115 (2000)). "[M]erely acting as a broker in seeking insurance[,]" however, "does not constitute an agency relationship between the insurance agency and the carrier to whom the policy is assigned." *Donegal Mut. Ins. Co. v. Grossman*, 195 F. Supp.2d 657, 666 (M.D. Pa. 2001). Indeed, the contract between Live Face and Merchants manifested the opposite: the agreement made clear that Martin could not act for Merchants and Live Face needed to obtain Merchants' endorsement to amend or waive a provision of the Policy. The record demonstrates no evidence that Merchants indicated otherwise. Accordingly, the Court finds that no agency relationship existed upon which to hold Merchants vicariously liable.

## IV. CONCLUSION

Live Face can pursue its negligence claim against Martin over the missing instructions to add the 2017 Mercedes 300CW4 to the Policy. Its other claims, however, are not viable, and the Court will therefore grant summary judgment on them. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J**.

Dated: April 1, 2020